## Joseph Donath and James J. Mazurie *against* the President and Directors of the Insurance Company of North America.

The notarial copy of an agreement made in Philadelphia, respecting the loading of a vessel insured, the original being admitted to be in the hands of an agent abroad, not permitted as evidence against the underwriters.

Covenant on a policy of insurance, on goods at and from Philadelphia to Havanna, and back again ; the property insured on the outward passage being warranted to belong to Don Alvarez Calderon, king's attorney in the island of Cuba.

A notarial copy of an agreement between the plaintiffs and the said Don Alvarez Calderon, respecting the goods laden, was offered in evidence by the plaintiffs. It was registered in Philadelphia, in the office of Clement Biddle, notary public, and the copy certified by him. It was admitted, that the original had been sent by the plaintiffs to the Havanna, where it continued in the hands of their agent.

The defendants' counsel excepted to the instrument being received in evidence. The paper offered is the copy of a copy of the original in the custody and power of the plaintiffs. The possession of the agent must be considered as the possession of the principal. The primary rule of evidence is, that the party should produce the best testimony in his power. In Parish *v.* Travis, the notice to an indorser of a note of its being dishonoured, was attempted to be shewn by a protest, but was refused on argument.

The present case is not within the words of the 5th section of the act of 5th March 1791. 1 St. Laws, 12.

The certified copies of the notary's record are intended plainly as evidence in foreign courts. The law is silent as to such copies being received in our own tribunals. Where the legislature *have intended to make copies evidence, they have *276] so declared it in express terms. Thus in the act concerning the probates of wills, passed in 1705, it is enacted, that the copies of all wills and probates, under the public seals, shall

be good evidence to prove the gift or devise thereby made. 1 St. Laws, 54, § 1.

So in the recording act of 1715, the copies or exemplifications of all deeds enrolled, shall be allowed in all courts, where produced. Ib. 111, § 5.

So in the auction act of 1780, the auctioneer is directed to keep a register of horses sold, and the copy thereof shall be read in evidence. Ib. 866, § 6.

So in the act passed on the 12th March 1791, enjoining certain duties on the secretary of the commonwealth ; the copies of bonds and recognizances given by public officers, certified under the hand and seal of the said secretary, or of the recorder of deeds of the proper county, are declared to be legal evidence. 3 St. Laws, 14, § 1. This act was passed seven days after the law enabling the governor to appoint notaries public. Many other instances of the same kind of legislative provision might be produced, if necessary. It cannot escape the observation of the court, that the defendants were neither parties nor privies to this agreement ; and that a copy at second hand is now attempted to be read, where it is admitted, that so far from the original being lost or destroyed, it now is in the hands or power of the party offering the evidence.

The plaintiffs' counsel contended, that the rules of evidence in commercial matters, were not quite the same, as in other instances. The testimony of a public notary is evidence, by the laws of France. Contracts are made in his presence, and his testimony would be received in England. 1 Atky. 47. Great force is given to notarial acts. 6 Ves. jr. 823. The copy of a French bill of sale of a ship, by a notarial act under seal, has been ruled to be good evidence to prove a transfer of the vessel. 3 Espin. Rep. 287–8. All these are cases independent of legislative provision.

When we consider the policy of the act of the 5th March 1791, and the different clauses of that law, the intention of the legislature cannot be mistaken. The notaries public are to be of known good character, integrity and abilities, § 2. They are impowered to administer oaths in all matters incident to the exercise of their offices, § 3. To receive the proof of acknowledgment of all instruments of writing relating to commerce or navigation, and also to make declarations and testify the truth thereof, under their seals of office, § 4. And to keep fair registers of all official acts by them done in virtue of their offices, and *give certified copies of any records, § 5. Why [*277 should not the copy of an agreement respecting the loading of a ship, be equally received in evidence, when properly certified by the notary, as hypothecations, charter parties, letters of attorney, and other writings of a commercial nature, enumerated in the fourth section of the law ? They stand on the same ground, and cannot be distinguished on principle.

[Donath et al. *v.* Insurance Co. of North America.]

Every exemplification of a record is but the copy of a copy; and being made evidence, it operates as such in all given cases.

YEATES, J.* delivered the opinion of himself and SMITH, J. The cases cited by the plaintiffs respect commercial transactions in foreign countries, in which the *lex loci* is of great weight. In 3 Espin. Rep. 289, Lord ELDON admitted the copy, "the origi- "nal being always retained, and a copy only issued by a person, "having power by the law of France to authenticate the instru- "ment."

But whatever our opinions may be, we do not deem it neces- sary in the present instance, to lay down any general rule, with respect to notarial copies.

It is admitted here, that the original agreement is in exist- ence in the possession of the plaintiffs' agent, and consequently under their control. The defendants are neither parties nor privies thereto, and it would be highly dangerous to affect the rights of strangers by such a copy, where the legislature have been silent on the subject.

BRACKENRIDGE, J. I am clear, that the paper offered is good evidence as between the contracting parties; and as to others, I also think it is evidence. I see no difference between this copy, and exemplifications by registers of wills and recorders of deeds.

YEATES, J. Two of us conceive, that the distinction rests on the phraseology of the different laws constituting the sev- eral offices.

Evidence overruled.

After the cause had progressed some length, it was agreed to discharge the jury, and state a case for the opinion of the court thereon.

Messrs. M Levy and Dallas, *pro quer.*

Messrs. Ingersoll and Hopkinson, *pro def.*

<hr />

*278]    *MARCH TERM, 1806.

FOR THE EASTERN DISTRICT.

CORAM—TILGHMAN, CHIEF JUSTICE, YEATES, SMITH AND BRACKENRIDGE, JUSTICES.

MEMORANDUM.

Immediately after the rising of the court, in December term 1805, the honorable EDWARD SHIPPEN, esquire, resigned his office as Chief Justice of the Supreme Court; which was accepted by the governor on the last day of the same month.

On the 25th February 1806, the honorable WILLIAM TILGHMAN, esquire, was com- missioned as Chief Justice, *quamdiu se bene gesserit.* His commission was publish- ed in open court, on the first day of the next term, 3d March 1806.

*Absente* Chief Justice.